# Exhibit F to

# Answer and Affirmative Defenses of Defendant Assurance Company of America



# ZURICH

May 17, 2004

Eric Raisman
Public Insurance Adjusters Inc.
245 Country Way
Needham, MA 02492

          Re: Claim Number: 535-0005354-001
             Insured: Dr. Punyamurtula Kishore
             Date of Loss: Unknown – reported as February 7, 2004
             Type of Loss: Water/Mold damage
             Location of Loss: 15 Maple Street, Bridgewater, MA

Dear Mr. Raisman:

The following sets forth the coverage analysis of the Assurance Company of North America ("Zurich") with respect to the above claim. Based upon the information presented and our investigation as well as the terms and conditions of policy PAS43013888, I regret to inform you that there is no coverage for the above-captioned claim.

Zurich North America.
Environmental Claims
1400 American Lane
Schaumburg IL 60196-1056

Sonal P Desai, CPCU, AIC, AIS
Claim Specialist

Toll Free Phone
800-695-6575

Direct Phone
847-240-4487

Direct Fax
847-605-7811

Sonal.Desai@zurichna.com

Facts:

The property at above location was redecorated–(interior painting, replacing carpet, refinishing hardwood floors) some time in November 2003. The property was originally rental property however, the tenants moved out on or about January 31, 2003. Since that time, the insured Dr. P. Kishore was in the process of turning the dwelling into an office however, that has been held up due to zoning laws. The dwelling had not been insured since 1998 until a Lessor Risk Only policy with us was procured. This policy is a commercial policy with building limit of $200,000 and $5000 for Business Personal Property. The effective date of this policy of insurance with us is January 14, 2004. On February 7, 2004 water damage was discovered at the above location. The loss was reported as water damage due to frozen pipes.

Investigation:

As you are aware, we hired Mr. Kevin Macneil of William Kramer & Associates to assist us in investigating this loss. Mr. Macneil contacted the insured on February 11, 2004 and instructed him to contact a plumber to repair the broken pipe(s) and a restoration company to dry the premises. Once this had been done he requested the insured contact him to schedule an inspection. On February 16, 2004 the insured's associate, David Rudnicki contacted Mr. Macneil to advise the insured had been unable to locate a plumber or restoration company. An inspection of the premises was conducted on February 19, 2004.

The inspection by Mr. Macneil revealed that there was extensive water damage to the second and first floor ceilings, walls and floors. The insured had advised the basement was flooded with 8-10 inches of water and the boiler was partially submerged. The majority of the damage was located in the left rear section of the building. The paint on walls was peeling. There was ice on the ceiling insulation and there was ice on the left rear exterior wall. The attic wall panelling was buckling. Mr. Macneil observed that attic area did not have any heat. He also noted that the copper tubing for the baseboard heat on the second floor was not



Page 2

connected to the boiler at the time of his inspection. All the visible plumbing throughout the house was intact and showed no signs of pipe breaks due to freezing.

His conversation with Dr. Kishore revealed that Ms. Sky Matthews, the property manager notified Dr. Kishore about the incident. We were told that Ms. Matthews was a full time employee and came to the above location 3-4 times per week. No one knows the date when Ms. Matthews visited this location prior to the date when she discovered the broken pipe. Ms. Matthews left Dr. Kishore's employment right after the incident. Our attempts to contact Ms. Matthews have gone unanswered. Our requests for contact information for Dan the Plumber remain unanswered as well. Mr. Macneil had requested you to have the contractor retain the damaged sections of the pipes that were replaced however the damaged sections of pipes were not retained for our inspection. We made several requests to take immediate steps to dry out the premises. However, it appears that dry out process was not started until approximately the 1" week of April 2004.

In his written statement, Dr. Kishore indicated that the dwelling has 13 rooms and was revamped as a home office for his practice. He further indicated that the current intended use was from September 2003 and that all the rooms contained personal property. Mr. Macneil estimated the total area of the dwelling to be 2683.09 sq.ft. Of this approximately 728.6 sq.ft was furnished/occupied. Barring few pieces of office equipment and some medical equipment, the entire home was vacant. There were no tenants at these premises. As indicated earlier, the above policy of insurance is a Lessors Only policy with very limited coverage for Business Personal Property. The electric bill for the period January 20, 2004- February 17, 2004 was $17.84. Both the gas and electric bill describe their services as Residential. It did not appear that Dr. Kishore was using the dwelling for its intended use- as a home office for his practice.

Insurance Policy:

Please refer to item IV. C. Loss Conditions: Duties in the Event of Loss or Damage on page 18 of your BUILDING AND PERSONAL PROPERTY COVERAGE FORM 9s1001 of your policy of insurance with us. It reads:

"In the event of loss or damage to Covered Property, you must:
b. Give us prompt notice of the loss or damage. Include a description of the property involved."
c. As soon as possible, give us a description of how, when and where the loss or damage occurred.
d. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase Limit of Insurance. Also, if feasible, set the damaged property aside and in the best possible order for examination.
h. Cooperate with us in the investigation or settlement of the claim."

Please refer to page 21 of your policy of insurance. Under I. Vacancy. Item 1. a (2). It reads:

"When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:
    (a) Is not rented; or
    (b) Is not used to conduct customary operations.

Please refer to Item 2 Vacancy Provisions: It reads:
"If the building where the loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage:



Page 3

**ZURICH**

    a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
       (1) Vandalism;
       (2) Sprinkler leakage, unless you have protected the system against freezing;
       (3) Building glass breakage;
       (4) Water damage;
       (5) Theft; or
       (6) Attempted theft.

Please refer to page 7 & 9 of the policy- under II COVERED CAUSES OF LOSS
It reads:

"RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE unless the loss or damage is excluded or limited as described below:

A.EXCLUSIONS:

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

e. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

f. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment caused by or resulting from freezing, unless:
(1) You do your best to maintain heat in the building or structure; or
(2) You drain the equipment and shut off the supply if the heat is not maintained.

<u>Discussion:</u>

As indicated earlier, of the total area of the dwelling of 2683.09 sq.ft approximately 728.6 sq.ft was furnished/occupied. This totals approximately 20% of the dwelling that was occupied and 80% that was vacant. Also, it did not appear that Dr. Kishore himself was using the dwelling for its intended use- as a home office for his practice. Ms. Matthews was the only employee who it appeared used one of the rooms in the dwelling as her office. All the renovations/remodelling were completed prior to 60 days before the date of loss.

The vacancy provisions of the policy apply to this claim and accordingly there is exclusion for water damage.

While gas bills were submitted to show that heat was on, our inspection revealed that the baseboard heat in the second floor rooms was not hooked up to the boiler and the attic did not have any heat.

There was an undue delay in taking steps to dry out the dwelling. Our requests for getting us information on the plumber, retaining damaged pipes for our inspection have not been met.

The policy conditions of taking steps to mitigate damages were violated.

In light of the foregoing, Assurance Company of America unfortunately can take no action on your behalf in connection with this matter and must respectfully deny your claim. By denying the claim for the foregoing reasons, the insurer is not waiving any other policy term

Page 4



or defense which may be applicable. We also reserve the right to rely on any additional grounds for disclaimer that may be subsequently determined to apply.

Please be advised that the denial of this claim is based on information gathered during our investigation. If you have any additional information, which you believe might change this coverage determination, please forward it to us and we will gladly review the information and re-evaluate our findings.

Please call me if you have any questions.

Sincerely,
Assurance Company of America

Sonal P Desai, CPCU, AIC, AIS
Claim Specialist

Cc: Northeast Insurance Agency
    648 Highland Ave
    Needham Heights MA 02494